IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADYN S., <br> B/N/F JUSTIN & MEGAN S., <br><br> Plaintiff, <br><br> v. <br><br> WAXAHACHIE INDEPENDENT SCHOOL DISTRICT; CARRIE KAZDA, Individually and in her Official Capacity; DERRICK YOUNG, Individually and in his Official Capacity; and MIKE LEWIS, Individually and his Official Capacity, <br><br> Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. 3:18-CV-2724-L |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Waxahachie Independent School District's Motion for Partial Dismissal of Plaintiff's Original Complaint (Doc. 15), filed November 19, 2018; Plaintiff's Response to Defendant Waxahachie Independent School District's Brief in Support of its Motion for Partial Dismissal of Plaintiff's Original Complaint (Doc. 20), filed December 10, 2018; and Defendant Waxahachie Independent School District's Reply Brief in Support of its Motion for Partial Dismissal of Plaintiff's Original Complaint (Doc. 24), filed December 26, 2018.

After carefully considering the motion, briefs, record, and applicable law, the court **grants** Defendant Waxahachie Independent School District's Motion for Partial Dismissal of Plaintiff's Original Complaint (Doc. 15); **dismisses with prejudice** Plaintiff's claims asserted pursuant to the Rehabilitation Act and Americans with Disabilities Act insofar as they rely on a hostile environment theory and **dismisses without prejudice** these claims insofar as they rely on an

**Memorandum Opinion and Order – Page 1**

intentional discrimination theory; and **grants** Plaintiff's request to replead the intentional discrimination claim but **denies** his request to replead the hostile environment claim.

I. **Factual and Procedural Background**

On October 15, 2018, Plaintiff Bradyn S. ("Plaintiff" or "Bradyn S."), a minor, through his parents Justin & Megan S., filed the Original Complaint ("Complaint") asserting claims against Defendant Waxahachie Independent School District ("Defendant" or "WISD") pursuant to the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("RA"), and Title II of the Americans with Disabilities Act ("ADA").[1] Plaintiff's claims relate to the alleged failure of WISD to design an alternative education setting that was tailored to his special needs and sufficiently addressed his behavioral issues. Pl.'s Original Compl., Doc. 1 at 4-8. On November 19, 2018, WISD filed its Motion for Partial Dismissal of Plaintiff's Complaint, seeking dismissal of the ADA and RA claims.

Plaintiff's ADA and RA disability-based discrimination claims are based on allegations that WISD denied him equal access to educational services and subjected him to a hostile environment.[2] Pl.'s Original Compl., Doc. 1 at 13-14. These claims arise from the following factual allegations set forth in the Complaint.

Bradyn S. began attending WISD[3] in August 2013. Pl.'s Original Compl., Doc. 1 at 4, ¶ 4.1. In October 2013, WISD determined that Bradyn S. was a student with autism and a speech

---

[1] Plaintiff also alleges claims against Defendants Carrie Kazda, Derrick Young, and Mike Lewis in their official and individual capacities. These Defendants separately filed motions to dismiss that the court will resolve by separate order.

[2] Although not specifically alleged in the Complaint, the court reasonably infers from these allegations and Plaintiff's Response to Defendant's Motion to Dismiss that he alleges two theories under the ADA and RA, namely, claims based on both intentional discrimination and a hostile environment.

[3] Bradyn S. alleges that WISD is a recipient of federal financial assistance, which WISD does not dispute in its Motion to Dismiss. Pl.'s Compl., Doc. 1 at 14, ¶ 8.5.

**Memorandum Opinion and Order – Page 2**

impairment who qualified for special education services pursuant to the IDEA. *Id*. Bradyn S. originally attended Shackleford Elementary, during which time he exhibited "a number of behavioral issues and was move[d] to a self-contained class where he received one-on-one instruction." *Id*. He transferred to Felty Elementary for the 2014-2015 school year, during which time "a number of documented incidents of violent behavioral outbursts" occurred. *Id*.

The majority of the alleged incidents related to his ADA and RA claims occurred during the 2016-2017 school year at Felty Elementary. Between August 22, 2016, and October 11, 2016, Bradyn S. "engaged in at least [nine] serious documented behavioral incidents[,] including attempting to stab another student with a pencil, slapping another student with a ruler, hitting a staff member, hitting students, and spitting in another students face." *Id*., ¶ 4.2. On September 28, 2016, Bradyn S. caused an incident that required the staff to restrain him, and "a use of restraint form was placed in his file." *Id*. During another one of these nine behavioral incidents, a classroom had to be evacuated. *Id*.

In October 2016, WISD conducted a three-year reevaluation of Bradyn S., in which the district's licensed specialist in school psychology determined that his behavior was "improving" and that his behavior was not impairing his learning or that of others. *Id*., ¶ 4.3. These records "do not indicate that the [specialist] considered the full history of severe incidents [that] had occurred in the Fall 2016 semester, the classroom evacuation, or the restraint report." *Id*.

On October 11, 2016, the ARD[4] committee held an annual meeting to discuss Bradyn S.'s educational needs in light of his disability. "The behavior specialist who works with [Bradyn S.]

---

[4] Bradyn S. refers to "ARD" but does not explain to the court the acronym's meaning. The court takes judicial notice of the Waxahachie Independent School District's website that explains the purpose of the ARD committee. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citation omitted) ("[I]t is well-established and '"clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record."). The website explains that, pursuant to the IDEA, a student with disabilities' need for supportive services is "typically considered during the student's admission, review, and dismissal (ARD) committee as the committee reviews and discusses the student's evaluation and assessment data." Waxahachie Independent School District, *Related Services for Students with*

was absent from this ARD meeting." *Id*. at 5, ¶ 4.4. Principal Carrie Kazda ("Kazda") testified that the behavioral specialist was not called "because only one behavioral incident had occurred that school year," which Bradyn S. contends "demonstrate[ed] a lack of awareness of the at least nine severe behavioral incidents that had occurred to that point[.]" *Id*. The exhibits admitted at the hearing included Bradyn S.'s disciplinary records, the use of restraint forms, and his "behavioral calendar[5]." At the conclusion of the hearing, the ARD committee determined that Bradyn S. "continued to be found eligible for special education services for autism and a speech/language impairment, but his behavior was not impeding his learning or that of others, and he did not requirement a Behavior Intervention Plan ("BIP"). *Id*. at 4-5, ¶ 4.4.

In February 2017, "major disciplinary events occurred" on the following dates: February 8, 9, 15, 16, and 27. *Id*. at 5, ¶ 4.5. Each incident involved either self-harm, harm to students, harm to staff, or a combination of the three. *Id*. Bradyn S.'s parents initiated a conference with the staff on March 3, 2017, and requested a Functional Behavior Analysis ("FBA") and a BIP. *Id*. An officer at the hearing informed Bradyn S.'s parents that the district had "initiated a request for a FBA on February 28, 2017," but Bradyn S. alleges that this contention was likely false because consent paperwork to perform the FBA was not "ready to give" to Bradyn S.'s parents at the meeting on March 3, 2017. *Id*.

On February 13, 2017, the school changed Bradyn S.'s classroom placement from one receiving instruction at a third to fifth educational level, to one receiving instruction at a kindergarten to second grade educational level. *Id*. at 5, ¶ 4.6. Bradyn S. contends that this change

---

*Disabilities*, https://www.wisd.org/apps/pages/index.jsp?uREC_ID=1082208&type=d&pREC_ID=1370166 (last visited Aug. 13, 2019).

[5] Plaintiff does not explain the nature of a "behavioral calendar" for the court to ascertain its importance as an exhibit at the meeting.

**Memorandum Opinion and Order – Page 4**

was made without giving prior notice to his parents or holding a ARD meeting "as is required by IDEA's procedural safeguards." *Id.* at 6, ¶ 4.6. Bradyn S. alleges that his parents received notice of his new class placement on March 3, 2017. *Id.* He alleges that his former classroom teacher did not provide his Individualized Education Program ("IEP")[6] to his new teacher after the change of placement. *Id.*, ¶ 4.8.

On March 3, 2017, Bradyn S. allegedly engaged in four behavioral incidents documented by WISD, in which he attacked another student. *Id.*, ¶ 4.9. He contends, "There appears to have been no major efforts by the staff to intervene in this behavioral outburst and the child's parents were not contacted." *Id.* The incidents culminated "in a major incident in which[,] after continuing to attack students and staff, [Bradyn S.'s] classroom was evacuated." *Id.* A teacher called the Waxahachie Police Department and informed it that this type of incident had occurred "many times." *Id.* Bradyn S. was eight-years old at the time. *Id.* Officer Derrick Young ("Young") arrived at the classroom, "took [Bradyn S.] to the ground, pinned him to the ground, and restrained his hands [] while the child screamed in agony and frustration for several minutes." *Id.* Kazda "participated in the restraint of the child." *Id.* At some point afterwards, Lieutenant Mike Lewis ("Lewis") also arrived on scene. *Id.* at 12, ¶ 7.4. Neither Kazda nor the teacher who called the police told the officers that Bradyn S. was an autistic child with a speech impairment, "even while the police attempted to ask the child questions [that] continued to exacerbate his already elevated

---

[6] Pursuant to the IDEA, schools must design plans, called Individualized Educational Programs ("IEPs"), which give disabled students "meaningful educational benefits." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 396 (5th Cir. 2012). "IEPs are created and periodically reviewed following meetings at which parents, teachers, other school personnel, and educational experts all participate." *Id.* at 395 (citing 20 U.S.C. § 1414(d)(1)(B)). "An IEP need not maximize the child's educational potential; it guarantees only a basic floor of opportunity for every disabled child, consisting of specialized instruction and related services which are individually designed to provide educational benefit." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 989 (5th Cir. 2014) (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247-48 (5th Cir. 1997) (internal quotation marks omitted)).

emotional state." *Id*. at 6-7, ¶ 4.9. The officers "then elicited that they were dealing with a special needs child." *Id*. at 7, ¶ 4.9. Bradyn S. was handcuffed and questioned further by the police. *Id*.

Following this incident, the school did not conduct a Manifestation Determination Review ("MDR") specific to this incident "to determine whether the behavior in question was a manifestation of the [s]tudent's disabilities, and there was not an FBA or BIP conducted to address this or prior incidents." *Id*. On March 6, 2017, Bradyn S. alleges that his parent submitted a written request for an ARD review, having previously made informal requests. *Id*., ¶ 4.10. Bradyn S. alleges that Kazda "had previously asked [the] parent to delay the ARD so that additional observation could be done of the student" in his new class assignment. *Id*.

On March 16, 2017, Bradyn S. contends that he was hospitalized at the Dallas Behavioral Healthcare Hospital for eight days and treated for suicidal ideation and aggression. *Id*., ¶ 4.11.

On April 19, 2017, Bradyn S. was involved in "another serious behavioral incident." *Id*., ¶ 4.12. WISD advised his parents that this incident violated its Student Code of Conduct, but it would not suspend Bradyn S. "because of a desire to not reinforce his behavior by providing his desired outcome." *Id*. WISD, rather, assigned Bradyn S. to "an interim alternative education setting ("IAES") in a self-contained special education classroom with two adults and no other students." *Id*. On May 1, 2017, the school conducted an MDR review and ARD review, during which it determined that Bradyn S.'s behavior "was a manifestation of his disability." *Id*. at 8, ¶ 4.12.

Plaintiff contends that Dr. Adiaha Spinks-Franklin provided expert witness testimony at a deposition on April 30, 2018, during which she testified that WISD's documents "mischaracterized" his behavior as being "mildly disruptive," when in fact it was "pretty significant externalized and disruptive behaviors that went back from 2014 until 2017." *Id*. at 8, ¶ 4.13. She further testified that the October 2016 ARD review was insufficient to address his

behavioral issues; that it incorrectly concluded that Plaintiff was not impeding his own learning or that of others; and that she would have recommended a Functional Behavior Assessment, a consultation with the district's autism specialist, and ABA-based interventions as part of a Behavior Intervention Plan. *Id*.

In its Motion to Dismiss, WISD argues that, under its interpretation of Fifth Circuit authority, the proper standard for alleging an intentional discrimination claim is deliberate indifference, which it argues "requires a showing of actual knowledge of discrimination and a deliberate refusal to take corrective action." Def.'s Mot. to Dismiss, Doc. 16 at 13 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). WISD argues that Bradyn S. has failed to meet this standard. WISD further argues that, to the extent the court does not adopt its interpretation of Fifth Circuit authority that the applicable standard is deliberate indifference, Bradyn S. has still failed to adequately allege his claims because he did not allege facts that create an inference of professional bad faith or gross misjudgment as required to establish an intentional discrimination claim under the RA and ADA. *Id*. (citing *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010)). WISD alleges that, at most, the allegations in the Complaint give rise to an educational malpractice claim, which is not actionable under the RA or ADA. *Id*.

With respect to Plaintiff's hostile environment claim, WISD argues that Bradyn S., pursuant to the applicable standard, failed to allege that the alleged wrongful conduct was made "because of" his disability; that he failed to allege the district subjected him to severe and pervasive conduct; and that he failed to show that WISD had actual knowledge of a hostile educational environment to which it responded with deliberate indifference. Def.'s Mot. to Dismiss, Doc. 16 at 15-17.

## II. Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any

documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id*. (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can

be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**III.    Analysis**

    **A.    Intentional Discrimination Claim Under ADA and RA**

"[W]hile the IDEA imposes an affirmative obligation on states to assure disabled children a free appropriate public education, § 504 and the ADA broadly prohibit discrimination against disabled persons in federally assisted programs or activities." [7] [8] *D.A. ex rel. Latasha A.*, 629 F.3d at 453 (citations omitted). The Fifth Circuit "has equated liability standards under § 504 and the ADA." *Id*. To allege intentional discrimination under § 504 and the ADA, a plaintiff must allege that "a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Id*. at 454 (quoting *Marvin H. v. Austin Indep. School Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (emphasis in original)). The Fifth Circuit uses the term "refusal" because § 504 "requires intentional discrimination against a student on the basis of his disability." *Id*. (citations omitted). In the educational context, "something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown." *Id*. (citations and internal quotation marks omitted). Namely, when the allegations giving rise to a

---

[7] Section 503 of the RA states in part, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

[8] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**Memorandum Opinion and Order – Page 10**

§ 504 or ADA claim are predicated on a disagreement over compliance with the IDEA,[9] the plaintiff must allege facts that create "an inference of professional bad faith or gross misjudgment" to sufficiently allege a claim for intentional discrimination in the school context. *Id.* at 455. "Something more than mere negligence must be shown." *Estate of A.R. v. Muzyka*, 543 F. App'x 363, 365 (5th Cir. 2013). A student's "mere disagreement with the correctness of the educational services rendered to him [or her] does not state a claim for disability discrimination." *D.A. ex rel. Latasha V.*, 629 F.3d at 455 (citing *Marvin H.*, 714 F.2d at 1356).[10]

As a preliminary matter, the court disagrees with WISD's argument that, under Fifth Circuit authority, the proper standard for establishing an intentional discrimination claim under the RA and the ADA is deliberate indifference. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) ("There is no 'deliberate indifference' standard applicable to public entities for purposes of the ADA or the RA."); *see also PlainsCapital Bank v. Keller Indep. Sch. Dist.*, 746 F. App'x 355, 364 (5th Cir. 2018) (declining to reach the issue of whether *Delano-Pyle* "is vulnerable to arguments about overlooked Supreme Court authority"). WISD correctly argues that the Fifth Circuit requires a showing of deliberate indifference to establish a claim for student-on-student harassment under the RA and ADA, as discussed more fully in the following section of this opinion, but the court has found no cases in which the Fifth Circuit extended the deliberate indifference standard to intentional discrimination claims under these two statutes.

The court does, however, determine that Plaintiff failed to allege sufficient facts in his Complaint that create an inference of professional bad faith or gross misjudgment by WISD.

---

[9] In this case, Bradyn S.'s § 504 and ADA claim are based on the same factual allegations giving rise to his IDEA claim. *See* Pl.'s Compl., Doc. 1 at 13, ¶ 8.1 ("Plaintiff[] incorporate[s] and reallege[s] sections 1-7 as if fully incorporated herein.").

[10] The Fifth Circuit has noted that the viability of claims under the disability non-discrimination laws are "constrain[ed]" in part because "the resolution of an IDEA claim in [a] school district's favor will frequently preclude parents' resort to redundant claims under § 504 and ADA." *D.A. ex rel. Latasha A.*, 629 F.3d at 454.

**Memorandum Opinion and Order – Page 11**

Shortly after Bradyn S. began attending WISD, the district determined that he was a student with a disability who qualified for special education services pursuant to the IDEA. In October 2016, both a three-year reevaluation hearing and ARD committee meeting were conducted to evaluate Bradyn S.'s behavior. At the conclusion of both assessments, the school determined that Bradyn S. was not impairing his learning or that of others, and he did not require a Behavioral Intervention Plan. Bradyn S. argues that, at the three-year reevaluation hearing, the specialist did not consider the full history of his behavioral incidents and, at the ARD meeting, the behavioralist specialist who worked with him was not present, and Kazda's testimony at the meeting demonstrated a lack of awareness of the behavioral episodes. These allegations demonstrate, at most, that Bradyn S. disagrees with how the meetings were conducted and their outcomes—but they do not give rise to an inference of professional bad faith or gross misjudgment by the WISD officials. To the extent that the officials present at the meetings did not adequately review certain records or exhibits pertaining to Bradyn S.'s behavioral episodes, such conduct does not rise above the level of negligence. Moreover, Bradyn S. alleges that he deposed an expert who concluded that WISD "mischaracterized" his behavior as being "mildly disruptive," and concluded that the October 2016 ARD review was insufficient to address his behavioral issues and resulted in incorrect conclusions. These allegations constitute differences of opinion between Bradyn S.'s alleged expert and WISD regarding the extent of his behavioral episodes and the appropriate action to address these episodes, but they do not give rise to an inference of bad faith or gross misjudgment by the district.

Moreover, Bradyn S. alleges that he had an IED in place at Felty Elementary, as required by the IDEA for disabled students. He alleges that, after he was reassigned classrooms on February 13, 2017, his former teacher did not provide his IEP to the new teacher. He further alleges that, after he was reassigned, Kazda advised his parents that the school intended to delay a requested

**Memorandum Opinion and Order – Page 12**

ARD meeting so that additional observation could be done of him in his new class environment. Although Bradyn S.'s new teacher may not have been made aware of the IED immediately following the reassignment, such oversight rises to the level of negligence and not gross misjudgment, particularly in light of the allegation that Kazda informed his parents that the school was observing him in his new learning environment in anticipation of a later ARD hearing.

Furthermore, Kazda's request that the school delay the ARD meeting does not constitute a "refusal" to provide Bradyn S. reasonable accommodations. Following the series of behavioral incidents in March and April 2017, the school conducted both an MDR and ADR review, during which it determined that Bradyn S.'s behavior "was a manifestation of his disability." The school also reassigned him to a new learning environment—the second reassignment during the 2016-2017 school year—that involved a self-contained special education classroom with two adults and no other students. These allegations show that the school, rather than "refuse" to provide reasonable accommodations, took various measures to tailor Bradyn S.'s learning environment to his educational needs based on his disability. To the extent he contends that the school unduly delayed reassigning him or holding certain meetings, such delay would constitute, at most, mere negligence, rather than bad faith or gross misjudgment.

While these allegations may later be found sufficient to allege an IDEA claim, they are not sufficient to show that WISD's conduct constituted bad faith or gross misjudgment to adequately plead an intentional discrimination claim under the ADA and RA. The court, accordingly, **grants** WISD's motion to dismiss with respect to this claim.

B. **Hostile Environment Claim Based on Alleged Harassment**

In *Estate of Lance v. Lewisville Independent School District*, the Fifth Circuit held that, in the school context, a student may allege a hostile environment claim under § 504 based on student-

on-student harassment. 743 F.3d 982, 995-96 (5th Cir. 2014) (applying *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), and noting that, while *Davis* involved a Title IX claim, courts have applied its holding to student-on-student harassment claims under § 504 because § 504 is "similarly worded to its counterparts in Title II of the ADA, Title IX, and Title VI."). The court held that, to allege a student-on-student harassment claim under § 504, a student must allege: (1) "he [or she] was an individual with a disability"; (2) "he [or she] was harassed based on his [or her] disability"; (3) "the harassment was sufficiently severe or pervasive that it altered the condition of his [or her] education and created an abusive educational environment"; (4) "defendant knew about the harassment"; and (5) "defendant was deliberately indifferent to the harassment." *Id.* at 996 (citing *Davis*, 526 U.S. at 650; *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 454 (6th Cir. 2008)).

Plaintiff does not allege that he was harassed by other students; rather, he alleges that WISD and its employees harassed him based on his disability by calling the police during the March 3, 2017 incident and requesting that the student be restrained by the police "without timely informing the police that the student was handicapped, despite [its] knowledge of such." Pl.'s Resp., Doc. 20 at 5. He alleges that he was harassed by WISD employees Tracy Gooch ("Gooch") and Kazda because they were either "present" or "participated" in Bradyn S.'s being subject to "physical force, restraint[,] and questioning that exacerbated his condition and subjected him to extreme distress[.]" *Id.* at 6. Bradyn S. alleges that, in light of his being an eight-year old autistic child with a speech disorder, "it was objectively unreasonable for the District to take the actions it did[,]" and "[t]his conduct was [] sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment." *Id.*

This court has found no Fifth Circuit authority that recognizes a cognizable claim under § 504 or the ADA for hostile environment claims based on allegations that a school district and its employees harassed a student. The standard in *Estate of Lance* has been expressly applied only in other Fifth Circuit opinions involving student-on-student harassment. See *Doe v. Columbia-Brazoria Indep. Sch. Dist. by and through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017); *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221-22 (5th Cir. 2015). In light of this authority, the court declines to extend a hostile environment claim beyond what is established in these opinions. The court, accordingly, determines that Plaintiff's hostile environment claim based on harassment, alleged pursuant to § 504 and the ADA, is not cognizable in this Circuit.[11] As the court concludes that Bradyn S.'s hostile environment claim based on harassment is not cognizable in the Fifth Circuit, the court **grants** WISD's motion to dismiss insofar as it seeks to dismiss this claim.

### IV. Amendment of Pleadings

In his Response, Plaintiff requests leave of court to amend his Complaint if the court determines that his claims should be dismissed for failure to state a claim upon which relief can be granted. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings pursuant to Rule 15(a)(2) of the Federal Rule of Civil Procedure is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether the allow an amendment of the pleadings, a court considers the following:

---

[11] The court also notes that its holding is consistent with that of another district court, in which it states that "the court has not found any opinion in which the Fifth Circuit has recognized ADA-based claims for disability-based educational harassment of students by instructors (i.e., non-peer-to-peer harassment) under a 'hostile learning environment' theory." *Campbell v. Lamar Institute of Technology*, No. 1:14-cv-399, 2015 WL 12942498, at *6 (E.D. Tex. Aug. 13, 2015) (citation omitted). Concluding that "no such cause of action exists," the court dismissed the plaintiff's ADA claim based on a hostile learning environment theory. *Id*.

**Memorandum Opinion and Order – Page 15**

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

In this case, Bradyn S. has not previously amended his pleadings. The court determines that Plaintiff should be permitted an opportunity to replead his intentional discrimination claim because, as previously explained by the court, this claim contains factual deficiencies that perhaps could be cured by amendment. The court, accordingly, determines that an amendment of his intentional discrimination would not be futile, or that such a request is made in bad faith. Moreover, as no scheduling order has been issued in this case, WISD will not be unduly prejudiced by the amendment. The court, however, will not permit Bradyn S. to replead his hostile environment claim based on its determination that the claim is foreclosed as a matter of law and, therefore, an amendment would be futile and unduly delay the resolution of this case. Accordingly, the court **grants** Plaintiff's request to amend the intentional discrimination claim but **denies** his request to amend the hostile environment claim.

## V. Conclusion

For the reasons herein stated, the court **grants** Defendant Waxahachie Independent School District's Motion for Partial Dismissal of Plaintiff's Original Complaint (Doc. 15); **dismisses with prejudice** Plaintiff's claims asserted pursuant to the Rehabilitation Act and Americans with Disabilities Act insofar as they rely on a hostile environment theory and **dismisses without prejudice** these claims insofar as they rely on an intentional discrimination theory; and **grants** Plaintiff's request to replead the intentional discrimination claim but **denies** his request to replead the hostile environment claim. Plaintiff shall file his amended complaint by **August 30, 2019**. If

Plaintiff fails to file an amended pleading in accordance with the court's instructions, the court will dismiss with prejudice his RA and ADA claim based on a theory of intentional discrimination for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), or dismiss it for failure to prosecute or comply with a court order pursuant to Federal Rule of Civil Procedure 41(b).

**It is so ordered** this 16th day of August, 2019.

Sam A. Lindsay
United States District Judge