IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRADYN S.,** | § | |
| **B/N/F JUSTIN & MEGAN S.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No. 3:18-CV-2724-L** |
| | § | |
| **WAXAHACHIE INDEPENDENT** | § | |
| **SCHOOL DISTRICT; CARRIE** | § | |
| **KAZDA, Individually and in her Official** | § | |
| **Capacity; DERRICK YOUNG,** | § | |
| **Individually and in is Official Capacity;** | § | |
| **and MIKE LEWIS, Individually and his** | § | |
| **Official Capacity,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant Carrie Kazda's Motion to Dismiss Plaintiff's Original

Complaint (Doc. 17), filed November 19, 2018; and Defendant Officers' Motion to Dismiss Under

Rule 12(b)(6) and Brief in Support (Doc. 19), filed November 21, 2018. After carefully

considering the motions, briefs, responses, replies, pleadings, and applicable law, the court **grants**

Defendant Carrie Kazda's Motion to Dismiss Plaintiff's Original Complaint (Doc. 17); **grants**

Defendant Officers' Motion to Dismiss Under Rule 12(b)(6) and Brief in Support (Doc. 19); and

**grants** Plaintiff's request to replead his section 1983[1] claims against these Defendants.

## I. Factual and Procedural Background

On October 15, 2018, Plaintiff Bradyn S. ("Plaintiff" or "Bradyn S."), a minor, through his

parents Justin & Megan S., filed the Original Complaint ("Complaint"), asserting a section 1983

---

[1] 42 U.S.C. § 1983. This statute provides a remedy for a person who has been deprived of a right guaranteed by the
United States Constitution or federal law by another person acting under color of law.

claim against Defendants Carrie Kazda ("Kazda"), Derrick Young ("Officer Young"), and Mike Lewis ("Officer Lewis), in their individual and official capacities.[2]  The allegations giving rise to the claim relate to an event that took place on March 3, 2017, at Felty Elementary School in the Waxahachie Independent School District ("WISD").

Bradyn S. is a student at Felty Elementary who has autism and a speech impairment, and qualifies for special education services.  Pl.'s Original Compl. ¶ 4.1. Bradyn S. has a history of engaging in serious behavioral incidents at school.   During the 2014-2015 school year, his first year at Felty Elementary, Bradyn S. was involved in "a number of documented incidents of violent behavioral outbursts." *Id*.  Between August 22, 2016 and October 11, 2016, Bradyn S. "engaged in at least [nine] serious documented behavioral incidents[,] including attempting to stab another student with a pencil, slapping another student with a ruler, hitting a staff member, hitting students, and spitting in another student[']s face." *Id*. ¶ 4.2. On September 28, 2016, Bradyn S. caused an incident that required the staff to restrain him, and "a use of restraint form was placed in his file." *Id*. During another one of these nine behavioral incidents, a classroom had to be evacuated.  *Id*. In February 2017, "major disciplinary events occurred" on the following dates: February 8, 9, 15, 16, and 27. *Id*. ¶ 4.5. Each incident involved either self-harm, harm to students, harm to staff, or a combination of the three.  *Id*.

On March 3, 2017, the day on which the incident at issue occurred, Bradyn S. allegedly engaged in four behavioral incidents documented by WISD, during which he attacked another student.  *Id*. ¶ 4.9. These incidents culminated "in a major incident in which[,] after continuing to

---

[2] Plaintiff also alleges claims against Waxahachie Independent School District ("WISD").  WISD filed a separate motion to dismiss that the court has already resolved. (Doc. 29).  As Bradyn S. also sues Defendants Kazda, Young, and Lewis in their official capacity, such suit is effectively a lawsuit against the governmental entity that employs these individuals.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Brooks v. George Cty.*, 84 F. 3d 157, 165 (5th Cir. 1996).

attack students and staff, [Bradyn S.'s] classroom was evacuated." *Id*. A teacher, Tracy Gooch ("Gooch") called the Waxahachie Police Department and informed it that this type of incident had occurred "many times." *Id*. Bradyn S. was eight years old at the time. *Id*.

Officer Young, a City of Waxahachie police officer, "arrived at the classroom, confronted Bradyn S., took [him] down to the ground, pinned him to [the] ground, and restrained his hands [] while [he] screamed in agony and frustration for several minutes." *Id*. Kazda, principal at Felty Elementary School, "participated in the restraint of the child." *Id*. Neither Kazda nor Gooch initially informed the officers that Bradyn S. was an autistic child with a speech impairment, "even while the police [later] attempted to ask the child questions[,] that continued to exacerbate his already elevated emotional state." *Id*. ¶ 4.9. Officer Lewis, a lieutenant with the City of Waxahachie police department, "arrived and placed the child in handcuffs." *Id*. ¶ 4.9. The officers "then elicited that they were dealing with a special needs child." *Id*. ¶ 4.9. Bradyn S. contends that he "was taken through the school in handcuffs and brought to the school's office w[h]ere he remained in handcuffs for an extended period, and continued to be questioned by the police." *Id*. He contends that he "remained in handcuffs well after [his] mother had arrived and the emergency or any need had subsided." *Id*. Following this incident, Bradyn S. contends that, on March 16, 2017, he was hospitalized at the Dallas Behavioral Healthcare Hospital for eight days and treated for suicidal ideation and aggression. *Id*. ¶ 4.11.

Based on the allegations relating to Defendants' participation in the March 3, 2017 incident, Plaintiff asserts a section 1983 claim against Kazda, Officer Young, and Officer Lewis in their official and individual capacities. In alleging this claim, Plaintiff sets forth the following allegations:

> Plaintiff Bradyn S. has a constitutional right under the Fourth
> Amendment to the United States Constitution to be free from

> unreasonable seizures and to be secure in his person and to maintain
> his bodily integrity against unreasonable assaults of his person.
>
> Plaintiff Bradyn S. has a constitutionally protected liberty interest
> under the Fourteenth Amendment in personal security, bodily
> integrity and freedom from unjustified intrusions on their personal
> security, including bodily restraint and punishment without due
> process of law.
>
> Defendants Derrick Young, Mike Lewis[,] and Carrie Kazda acting
> under color of state law, regulation, custom or usage in their capacity
> as Waxahachie police officers and an employee of WISD
> respectively deprived Plaintiff of his constitutional rights when they
> caused, and participated in Plaintiff's seizure with unjustified and
> unreasonable force; Defendants acted with deliberate indifference to
> the risk of harm to Plaintiff Bradyn S.[]
>
> Defendants Derrick Young[,] Mike Lewis and Carrie Kazda's
> actions, as described above, were objectively unreasonable, willful
> and wanton, in light of the facts and circumstances.
>
> As a result of Defendants' unconstitutional action and/or omission
> Plaintiff has been injured and harmed in the form of stress, anxiety,
> and emotional damage[,] and/or has otherwise been harmed and is
> entitled to compensation.

Pl.'s Compl. ¶¶ 7.2-7.6.

On November 19, 2018, Kazda filed her Motion to Dismiss Plaintiff's Original Complaint

(Doc. 17). With respect to the section 1983 claim asserted against her in her official capacity,

Kazda asserts that Bradyn S. has failed to sufficiently plead facts supporting a municipal liability

claim against WISD "[b]ecause an official capacity suit is treated as a claim against the

governmental entity," thus "[Bradyn S.]'s constitutional claims against [] Kazda in her official

capacity require [Bradyn S.] to establish municipal liability." Kazda Mot. to Dismiss 9-10. With

respect to the section 1983 claim asserted against her in her individual capacity, she argues that

she is entitled to qualified immunity because "it is not clearly established that she is unable to

participate in the restraint of a student who engaged in behavior requiring the evacuation of his

classroom." *Id.* at 13. Kazda further argues that Bradyn S. "cannot maintain a substantive due

process claim under the Fourteenth Amendment stemming from [Kazda's] participation in [his] restraint" as his claim is cognizable under the Fourth Amendment, not the Fourteenth. *Id.* at 7. Accordingly, Kazda asserts that the Fourth Amendment is the sole constitutional basis upon which Bradyn S. may assert his section 1983 claim.

On November 21, 2018, Officer Young and Officer Lewis (collectively, the "Officers") jointly filed their Motion to Dismiss Under Rule 12(b)(6) on similar grounds as those set forth in Kazda's motion. With respect to the section 1983 claim asserted against them in their official capacities, they contend that Bradyn S. has failed to plead a municipal liability claim against the City of Waxahachie (the "City"), which is required to assert a claim against the Officers in their official capacity. With respect to the section 1983 claim asserted against them in their individual capacities, they assert a qualified immunity defense and argue that Bradyn S. has failed to adequately plead that their actions on March 3, 2017 were objectively unreasonable in light of clearly-established law. As Kazda similarly argues, Young and Lewis further assert that Bradyn S. has not sufficiently pleaded facts to establish a cognizable substantive due process claim under the Fourteenth Amendment that is separate and distinct from his excessive use of force claim under the Fourth Amendment, and, on that basis, the court should dismiss Bradyn S.'s section 1983 claim to the extent it relies on the Fourteenth Amendment.

## II.    Standards

### A.    Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012)

(citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## B. Municipal Liability Under 42 U.S.C. § 1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a

federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city's or school district's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2.    A persistent, widespread practice of [city or school district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city or school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [city or school district] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). For purposes of a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)).

The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to him or her. Although a plaintiff need not offer proof of his or her allegations at the pleading stage, a plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability." *Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted). In other words, a plaintiff must set forth facts, or those from which the court can

reasonably infer, that: "(1) an official policy; (2) promulgated by the municipal policymaker; (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (footnote and citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

The policy or custom asserted by a plaintiff regarding municipal liability may include the inaction of official policymakers; however, such inaction can serve as the basis of a claim only when it constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390). Accordingly, municipal liability cannot be imposed against a city or other local government because of the negligence of its employees. To do so would predicate liability on a theory of respondeat superior, which is not allowed under *Monnell*, 436 U.S. at 694.

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cty. Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted). Although *Spiller* is over twenty years old, its holding that allegations of an allegedly

unconstitutional policy or custom of a local government may not be stated conclusory but must set forth specific facts is still solid law, and it was recently cited with approval by the Fifth Circuit in *Peña*. 879 F.3d at 622. If a complaint does not meet the standard set forth in *Spiller*, an action cannot "proceed beyond the pleading stage." *Id*.

### C. Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Defendants Kazda, Young, and Lewis have asserted this defense in their motions to dismiss.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of

the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing

law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cty.*, 154 F.3d 523, 525 (5th Cir. 1998); *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his or her conduct was lawful in light of clearly established law and the information possessed by the public official. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); *see also Stefanoff*, 154 F.3d at 525. Stated differently, and more rigidly, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015) (citation omitted).  Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights.  In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.  A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434.  If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.  *Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

Whether a plaintiff should file a reply is left to the discretion of the court.  *Schultea*, 47 F.3d at 1433-34.  As *Schultea* aptly states, "First, the district court must insist that a plaintiff suing a public official file a short and plain statement of his complaint, a statement that rests on more

than conclusions alone." *Id.* at 1433. A well pleaded complaint can be more helpful to the court deciding the issue of qualified immunity than a reply. For the reasons herein stated, rather than order Bradyn S. to file a reply, the court will allow him to replead his section 1983 claims.

## III. Analysis

### A. Section 1983 Claims Asserted Against Defendants Kazda, Young, and Lewis in Their Official Capacities

In his Complaint, Bradyn S. alleges that Defendants are employees of governmental entities. Specifically, he alleges that all actions taken by Kazda, as principal at Felty Elementary School, were taken "in the course and scope of her employment with WISD." Pl.'s Compl. ¶ 2.3. He also alleges that the Officers acted in their capacity as law enforcement officers employed by the City. Id. ¶¶ 2.4-2.5. As previously stated, pursuant to the theory of municipal liability, Bradyn S.'s section 1983 claim against Kazda in her official capacity is treated as a claim against WISD, and his section 1983 claim against the Officers in their official capacity is treated as a claim against the City. The Complaint, however, does not assert a municipal liability claim against WISD or the City.

Bradyn S. fails to set forth *any* factual allegations that an official policy or custom of WISD or the City resulted in the alleged deprivation of his rights under the Fourth or Fourteenth Amendment during his restraint and handcuffing on March 3, 2017. He also fails to plead any allegations showing a widespread practice of WISD or City employees that is "so common and well-settled as to constitute a custom that fairly represents [WISD or City] policy." *Webster*, 735 F.2d at 841. As Bradyn S.'s Complaint lacks factual support for both standards, the court cannot reasonably infer that WISD or the City has a policy or practice that resulted in Bradyn S.'s alleged injuries, and, therefore, Bradyn S.'s Complaint lacks adequate support to assert a section 1983 municipal liability claim. Without sufficiently pleading facts to support a municipal liability claim

against WISD and the City, Bradyn S.'s claims against Defendants in their official capacities fail. Accordingly, the court will grant Defendants' motions to dismiss with respect to the section 1983 claims asserted against them in their official capacities.

**B.    Section 1983 Claims Asserted Against Defendants Kazda, Young, and Lewis in Their Individual Capacities**

Defendants, in their respective motions, assert that they are entitled to qualified immunity because Bradyn S. failed to sufficiently allege that their actions constituted a violation of a constitutional right under either the Fourth or Fourteenth Amendment. Defendants further argue that Bradyn S.'s claim for excessive force, related to his restraint and handcuffing on March 3, 2017, is predicated on the protections afforded by the Fourth Amendment, and he does not, therefore, have any separate and distinct substantive due process claim under the Fourteenth Amendment. The court agrees.

A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). "[If] a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, and not under the rubric of substantive due process." *Hernandez v. United States*, 757 F.3d 249, 278 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (internal quotation marks omitted); citing *Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998)). "Substantive due process analysis is therefore inappropriate in [a] case only if [the plaintiff's] claim is 'covered by' the Fourth Amendment." *Id.* (quoting *City of Sacramento*, 523 U.S. at 843) (internal quotation

marks omitted). The court, accordingly, determines that Bradyn S.'s claim arising under the Fourth Amendment precludes him from asserting a substantive due process violation with respect to his section 1983 claim for excessive force.

To analyze whether Defendants' actions violated the Fourth Amendment, and thus constituted excessive force, the court must determine whether Plaintiff has set forth sufficient allegations from which the court can reasonably infer that Defendants' alleged conduct was clearly unreasonable. Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id*. at 397 (citation omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id*. at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted). Injury can be one that is physical or psychological. *Ikerd v Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996). Considering this standard, the court now turns to the issue of whether Defendants are entitled to qualified immunity.

### 1. Kazda – Qualified Immunity

In her motion to dismiss, Kazda asserts that she is entitled to qualified immunity because Bradyn S. failed to plead facts establishing a violation of his constitutional rights under the Fourth

Amendment arising from her use of restraint, and, to the extent that he did, he did not establish that her use of restraint violated clearly established law at the time of the incident on March 3, 2017. Specifically, Kazda contends that it was not clearly established that "she is unable to participate in the restraint of a student who engaged in behavior requiring the evacuation of his classroom." Kazda Mot. to Dismiss 13. Based on the pleadings, the court agrees and concludes that Bradyn S. failed to allege a constitutional violation against Kazda arising from the use of excessive force.

As previously stated by the court, to sufficiently plead a section 1983 claim for excessive force, a plaintiff is required to set forth facts that allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper*, 844 F.3d at 522. Bradyn S. failed to meet this requirement. Specifically, he fails to allege sufficient facts to support that Kazda used any force at all. Instead, his sole allegation regarding Kazda's potential use of force during the March 3, 2017 incident is that she "participated in the restraint of the child." Pl.'s Compl. ¶ 4.9. The court views Bradyn S.'s use of the word "participated" vague, and, as a result, the court cannot ascertain Kazda's alleged role in the incident or any conduct that could be considered a use of force. In his response to Kazda's motion to dismiss, Bradyn S. directs the court to several allegations asserted in his Complaint that he believes clarifies Kazda's alleged use of force, but none of these facts relates to whether Kazda personally used any amount of force against Bradyn S. during the incident at issue. Absent any specific allegations regarding the manner in which Kazda participated in the restraint, the court cannot determine whether her alleged use of force constituted a constitutional violation.

Moreover, without further information regarding Kazda's participation, the court cannot assess whether any alleged force used by Kazda was clearly excessive to the need considering Bradyn S.'s behavior at the school leading up to the events at issue, namely, his continued attacks

on students and teachers; nor can the court reasonably infer from the allegations in Bradyn S.'s pleadings that the force, if any, was objectively unreasonable. The Fifth Circuit has "recognized that preservation of order in the schools allows for closer supervision and control of school children than would otherwise be permitted under the Fourth Amendment." *Flores v. School Bd. of DeSoto Parish*, 116 F. App'x 504, 510 (5th Cir. 2004). In the public-school context, as is the case here, the Fifth Circuit has "gone to great lengths to emphasize the special circumstances facing school administrators in maintaining discipline in the classroom and on school grounds." *Campbell v. McAlister*, 162 F.3d 94, 1998 WL 770706, at *4 (5th Cir. 1998). In *Campbell*, the Fifth Circuit determined that an officer's conduct in physically removing a disruptive child from his classroom was "going to be necessary" because the student refused to stand up or leave the room and was defiant. *Id*. The court reasoned, "The Fourth Amendment's reasonableness standard must afford school officials with a relatively wide range [of] acceptable action in dealing with disruptive students." *Id*. (citation omitted).

In the present case, prior to his restraint, Bradyn S. engaged in four separate behavioral incidents before continuing to attack students and staff, leading Kazda to evacuate his classroom. Pl.'s Compl. ¶ 4.9. Considering these circumstances, the court concludes that Kazda's "participation" in the restraining of Bradyn S.—without any specificity regarding the extent and nature of her participation—was not clearly excessive to the need to manage Bradyn S.'s behavior at the time. In his response, Bradyn S. does not dispute a principal's need to maintain discipline in the schools; however, he continues to assert that the alleged need for use of force was unreasonable given Kazda's awareness of his disabilities but fails to cite any authority supporting this assertion. Instead, he asserts that, even if Kazda's use of force was reasonable, her knowledge of his special needs makes her participation in restraining Bradyn S. objectively unreasonable. The court finds these arguments unpersuasive. The court determines that Bradyn S. failed to allege

facts sufficient to support his section 1983 claim for excessive force against Kazda and, therefore, defeat or overcome her entitlement to qualified immunity. The court, as later discussed in detail, will allow Bradyn S. to replead his section 1983 claim against Kazda.

### 2. Young and Lewis – Qualified Immunity

In their motion to dismiss, the Officers assert that they are entitled to qualified immunity because their physical restraint and handcuffing of Bradyn S. did not constitute excessive force in violation of the Fourth Amendment. Specifically, they contend that Bradyn S. failed to sufficiently plead that he suffered an injury directly caused by their actions. The Officers acknowledge that "[w]hile Plaintiff does allege that [he] was admitted to the hospital, the Complaint does not allege[] facts sufficient to show Officer Young's restraint proximately caused the hospitalization." Defs.' Mot. to Dismiss 8. Additionally, the Officers argue that Officer Young's restraint of Bradyn S. was reasonable considering the need "to gain control over an out of control student who presented a danger to himself, school staff, and other students." *Id*. at 9. Similarly, they argue that Officer Lewis's handcuffing of Bradyn S. was reasonable given his "violent outbursts earlier in the day." *Id.* at 8.

At the motion-to-dismiss stage, the court must view the factual allegations in the light most favorable to Plaintiff when analyzing whether the Officers' actions were reasonable under the Fourth Amendment, applying the *Graham* factors. This analysis "requires careful attention to the facts and circumstances of each particular case" when viewing the facts in the light most favorable to a plaintiff. *Graham*, 490 U.S. at 396 (citation omitted). Here, Bradyn S. admits that prior to the Officers' actions, specifically the restraining and handcuffing of Bradyn S., he had engaged in four separate behavior incidents and attacked students and staff. *See* Pl.'s Compl. ¶ 4.9. Considering both these allegations and the *Graham* factors, the court determines that the Officers' actions were reasonable. The court further determines that Bradyn S. failed to allege a

constitutional violation against the Officers arising from the use of excessive force. Specifically, Bradyn S. did not plead facts sufficient to establish that he (1) was injured as a result of being restrained and handcuffed by the Officers; and (2) that any alleged injury was a direct result of, and only from, a use of force that was clearly excessive. *See Cooper*, 844 F.3d at 522 (applying *Graham*).

With respect to the excessive force claim against Officer Lewis, Bradyn S.'s only allegation is that "Lewis arrived and placed [him] in handcuffs." Handcuffing a person, even if humiliating and embarrassing, is "not so extraordinary as to violate the Fourth Amendment." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001). Similarly, handcuffing, even too tightly, without more—which Bradyn S. does not allege here—does not amount to excessive force. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). In his response, Bradyn S. contends that the length of time for which he was handcuffed and questioned, not merely his handcuffing, violated his constitutional rights. He further contends that he was kept in handcuffs "well after [his] mother had arrived and the emergency or any need had subsided." Pl.'s Compl. ¶ 4.9. The court determines, however, that these allegations are conclusory and unpersuasive, especially given Bradyn S.'s admissions regarding his behavior leading up to the incident at issue.

With respect to Officer Young, Bradyn S. asserts in his response to the Officers motion to dismiss that he was pinned to the ground by Officer Young's body weight. He further contends that Officer Young's "extreme degree of force against an eight year [old] child was objectively unreasonable." Once again, the court finds that these conclusory allegations are insufficient to establish that Officer Young's use of force violated Bradyn S.'s constitutional rights under the Fourth Amendment. Further, Bradyn S. failed to sufficiently allege that he suffered any injury, let alone more than a de minimis injury, that was directly caused by the Officers' alleged use of force. In his Complaint, Bradyn S. states he was hospitalized for eight days for suicidal ideation and

aggression following the March 3, 2017 incident. Pl.'s Compl. ¶ 4.11. The Officers, however, contend that Bradyn S. does not identify the reason he was taken to the hospital, and, therefore, he fails to allege facts sufficient to show the Officers' actions proximately caused the hospitalization. The court agrees.

To succeed on his excessive force claims, Bradyn S. must set forth allegations that demonstrate he suffered some form of injury that is more than de minimis. *Aguilar*, 512 F. App'x at 449; *see Glenn*, 242 F.3d at 314 (holding that to succeed on an excessive force claim, the resulting injury "must be more than a de minimis injury"); *see also Flores,* 381 F.3d at 397-98 (requiring a substantial psychological injury to meet the injury element of an excessive force claim). The court, however, concludes that Bradyn S. failed to set forth allegations to meet this burden. In his response, Bradyn S. argues that the required hospitalization for psychological injuries "following the use of excessive force" is sufficient to satisfy the injury element. He further argues that, during the restraint on March 3, 2017, he "screamed in agony and frustration for several minutes," which he contends also demonstrates that he suffered a psychological injury during the incident. *Id.* Additionally, Bradyn S. alleges that he suffered this injury because he continued to be handcuffed and questioned after the Officers "had ascertained that [he] had special needs, and after any possible need to hold the child in handcuffs had subsided." *Id.* at 4. Despite Bradyn S.'s attempts to create a causal link between the Officers' actions and his psychological injuries, the court determines that these allegations are merely speculative at this juncture.

While the court acknowledges that hospitalization for suicidal ideation and aggression may be deemed a substantial psychological injury depending on the circumstances, that is not the issue here. The issue is that Bradyn S. failed to sufficiently plead, as required, that his psychological injuries were proximately caused by the Officers' actions. The court cannot reasonably infer that Bradyn S.'s hospitalization on March 16, 2017—13 days after the March 3, 2017 incident—

directly resulted from being restrained by Officer Young and handcuffed by Officer Lewis. *See* Pl.'s Compl. ¶¶ 4.1-4.8. Therefore, the court determines that Bradyn S. has failed to allege an underlying Fourth Amendment claim against the Officers arising from the use of excessive force.

Even if Bradyn S. had established that the Officers used excessive force, and thus conducted an unreasonable seizure under the Fourth Amendment, the court finds that the Officers are still entitled to qualified immunity as Bradyn S. failed to show that his right to be free from seizure under the given circumstances was a clearly established right. A right is only clearly established when it is sufficiently clear that a reasonable officer, in Officer Young and Officer Lewis's position at the time, would understand that his conduct violated the right in issue. *See Anderson*, 483 U.S. at 640.

In this case, Bradyn S. fails to present any applicable authority stating that he had a right to be free from the use of restraint and handcuffs because of his special needs when his classroom had to be evacuated as a result of his behavior. Perhaps most significantly, he fails to consider the implications of the Fourth Amendment in a school setting. This court has previously noted that when analyzing a police officer's use of force when responding to a school's request for back-up, as is the case here, the court should consider the unique challenges of a school environment, especially given that a reasonableness analysis under the Fourth Amendment is fact-intensive. *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 895 (N.D. Tex. 2018) (citing *Edmond on Behalf of M.B. v. Lafayette Consol. Gov't*, 2018 WL 344154, at *6 (W.D. La. Jan. 9, 2018) (citation omitted)). Thus, the court must consider the schools' "custodial and tutelary responsibility for children," when analyzing whether the Officers use of force was reasonable. *Milligan v. City of Slidell*, 226 F.3d 652, 654 (5th Cir. 2000) (quoting *Veronica Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995).

Bradyn S. asserts that the school context should not be considered when analyzing the Officers' alleged use of force because they "were responding to a 911 call [] and were not school resource officers or otherwise agents of the school district." Pl.'s Resp. to Defs.' Mot. 9. The court finds this position meritless as the location of the March 3, 2017 incident is critical to analyzing whether the Officers' actions were reasonable and cannot be divorced from the full analysis. *See Edmond on Behalf of M.B.*, 2018 WL 344154, at *6. Moreover, Bradyn S. fails to cite any applicable authority that, considering his behavior before being restrained and handcuffed by the Officer Young and Officer Lewis as well as his special needs, would have apprised reasonable officers in the same situation as Officer Young and Officer Lewis that their alleged conduct was clearly unreasonable. The court reiterates its position in *Mohamed*: the rights associated with a police officer's alleged use of force in a school setting is not a clearly established area of law. *See Mohamed for A.M.*, 300 F. Supp. 3d at 894-95. Accordingly, the court concludes that Bradyn S.'s excessive force claim fails because existing law at the time would not have apprised reasonable officers in Officer Young and Officer Lewis's position that their alleged conduct related to restraining and handcuffing Bradyn S. would violate the Fourth Amendment's prohibition on excessive force. Accordingly, and per Plaintiff's request, the court will allow Plaintiff to replead his section 1983 claims against the officers.

### C.    Amendment of Pleadings

In his responses to Defendants' motions to dismiss, Bradyn S. requests leave of court to amend his Complaint if the court determines that his claims should be dismissed for failure to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021

(5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Bradyn S. has not previously amended his pleadings. Thus, the court determines that Bradyn S. should be permitted an opportunity to replead his section 1983 claim and argue why Defendants are not entitled to qualified immunity because, as previously discussed by the court, the pleadings regarding this claim contain factual deficiencies that could be possibly cured by amendment. Also, Bradyn S. should be given an opportunity to plead his section 1983 claim against WISD and the City in accordance with the standard herein set forth. Moreover, existing Supreme Court and Fifth Circuit authority cautions against not allowing a plaintiff an opportunity to amend when the deficiency relates to factual allegations and the party's pleadings have not been previously amended. The court, accordingly, determines that an amendment of Bradyn S.'s section 1983 claim would not be futile at this stage and that such request is not made in bad faith. Moreover, as no scheduling order has been issued in this case, the court does not believe that Defendants would be unduly prejudiced by the amended pleading. Therefore, the court **grants** Plaintiff's request to amend his Complaint and replead his section 1983 claim against Defendants Kazda, Young, and Lewis as well as WISD and the City.

## IV. Conclusion

For the reasons herein stated, the court **grants** Defendant Carrie Kazda's Motion to Dismiss Plaintiff's Original Complaint (Doc. 17); **grants** Defendant Officers' Motion to Dismiss Under Rule 12(b)(6) and Brief in Support (Doc. 19); and, rather than dismiss this action, **grants**

Plaintiff's request to replead his section 1983 claims against these Defendants and the governmental entities—WISD and the City. The amended complaint must be filed by **September 24, 2019**. Failure to replead in accordance with the court's directive and the standards enunciated herein will result in dismissal of these claims with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or dismissal of these claims under Federal Rule of Civil Procedure 41(b) for failure to prosecute or comply with a court order.

**It is so ordered** this 10th day of September, 2019.

Sam A. Lindsay
United States District Judge