IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADYN S., BY NEXT FRIENDS <br> JUSTIN S. AND MEGHAN S., <br><br> Plaintiff, <br><br> v. <br><br> WAXAHACHIE INDEPENDENT <br> SCHOOL DISTRICT, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3:18-cv-2724-E |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are two Motions to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6)—one filed by Defendants the City of Waxahachie, Officer Derrick Young, and Officer Mike Lewis and one filed by Defendants Waxahachie Independent School District and Carrie Kazda (Doc. Nos. 39 & 41). For reasons that follow, the Court grants the motions.

## **Background**

Minor child Bradyn S., by his next friends and parents, sued the Waxahachie Independent School District (WISD) and Carrie Kazda, Principal of Felty Elementary School, as well as the City of Waxahachie and two of its police officers, Derrick Young and Mike Lewis. Shortly after Plaintiff began attending school in the district, WISD determined he qualified for special education services as a student with autism and speech impairments. He has a history of violent behavioral outbursts at school. From August 22, 2016 to October 11, 2016, Plaintiff engaged in at least 9 serious documented behavioral incidents at Felty Elementary, including attempting to stab another

1

student with a pencil and hitting a staff member. Plaintiff's claims arise out of WISD's handling of his special needs and also out of an incident at Felty Elementary on March 3, 2017, when he was eight years old. On four separate occasions that day, Plaintiff attacked a fellow student. Then there was a "major incident" in which Plaintiff attacked school staff and his classroom was evacuated as a result of his behavior. The school called the police, and Plaintiff was restrained and handcuffed. Plaintiff alleges that as a result of this incident, he was treated for psychological injuries.

Plaintiff asserts claims under the Individuals with Disabilities Education Act (IDEA), § 504 of the Rehabilitation Act (RA), the Americans with Disabilities Act (ADA), and 42 U.S.C. § 1983. The Court previously granted Defendants' motions to dismiss Plaintiff's original complaint and allowed Plaintiff to replead. Plaintiff filed a First Amended Complaint, and Defendants have again moved to dismiss under Rule 12(b)(6). The facts and law were set out in detail in the Court's two previous opinions (Doc. Nos. 29 & 31) and will not be repeated in the same detail here. Plaintiff's claims under IDEA are an appeal from the decision of a Special Education Hearing Officer in an underlying special education due process hearing. WISD has not moved to dismiss these claims. According to the amended complaint, as a result of Defendants' acts or omissions, Plaintiff has been injured and harmed in the form of "stress, anxiety, mental anguish, physical pain and emotional damage and/or has otherwise been harmed and is entitled to compensation." He seeks an order reversing the decision of the Special Education Hearing Officer and a judgment awarding compensatory damages, attorney's fees, and costs.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may move to dismiss the plaintiff's claims for

"failure to state a claim upon which relief may be granted." *Id.* 12(b)(6). To survive such a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## 42 U.S.C. § 1983 Claims

Plaintiff's § 1983 claims arise from the events of March 3, 2017, when the police were called to his school and he was restrained and handcuffed. Plaintiff alleges that Officers Young and Lewis and Principal Kazda deprived him of his Fourth Amendment rights when they caused and participated in Plaintiff's seizure with unjustified and unreasonable force. Plaintiff asserts § 1983 claims against them in both their individual and official capacities and asserts *Monell* claims against the City and WISD. The Court previously determined that Plaintiff's original complaint failed to state a claim for § 1983 violations.

1. Qualified Immunity — Principal Kazda

Principal Kazda asserts she is entitled to qualified immunity against Plaintiff's § 1983 claim against her in her individual capacity. Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

The Court previously found that Plaintiff failed to allege sufficient facts to support his § 1983 claim for excessive force against Kazda and defeat her entitlement to qualified immunity. To sufficiently plead a claim under § 1983 for excessive force, a plaintiff must allege facts showing an injury, which resulted directly and only from a use of force that was clearly excessive, and the excessiveness of which was clearly unreasonable. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Specifically, Plaintiff failed to plead facts to show Kazda used any force. In his original complaint, his sole allegation against her was that she "participated in the restraint of the child."

In his amended complaint, Plaintiff alleges that Kazda "participated in the restraint by holding [Plaintiff's] head." Officer Lewis arrived and placed the child in handcuffs, and Kazda and the two officers then took the child through the school in handcuffs to Kazda's office where he remained in handcuffs for an extended period. The amended complaint further asserts that "Kazda held [Plaintiff's] head in place from the time Defendant Young pinned the student face down to the ground, until Defendant Lewis placed the student in handcuffs." Plaintiff alleges that Kazda's actions are governed by section 89.1053 of the Texas Administrative Code, which pertains to use of restraints by school personnel. According to the complaint, this provision requires that restraint must be implemented in such a way as to protect the health and safety of the student and others. Plaintiff alleges the restraint employed was a threat to his health and safety in that "he was placed in the prone position on his stomach, and Officer Young sat on [him] and used his body weight to keep the eight year old child pinned to the ground." Kazda participated in this restraint "by grasping the child's head during the time he was wrongfully placed in the prone position with an officer's body weight pinning him to the ground." Plaintiff also alleges that Kazda did not attempt to have him put in a restraint that was not a threat to his health and safety or which was less likely to deprive him of basic human necessities. Plaintiff alleges that the use of adult

4

handcuffs on a child was also excessive and applied for a significantly longer time past the point any emergency existed. Kazda failed to discontinue the restraint or advocate that it be discontinued when an emergency no longer existed. According to the amended complaint, "[b]ecause Kazda acted in violation of Tex. Admin. Code § 89.1053, Kazda's participation in the restraint violated clearly established law."

In the school defendants' motion to dismiss the amended complaint, Kazda asserts that Plaintiff's § 1983 claims cannot be based on alleged violations of the Texas Administrative Code and the allegations against her are still insufficient to implicate Plaintiff's Fourth Amendment rights. The Court agrees. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (violation of state statue alone is not cognizable under § 1983 because § 1983 is remedy for only violations of federal statutory and constitutional rights). Plaintiff has failed to allege sufficient facts to set out a claim that Kazda used force that was clearly excessive. The amended complaint alleges Kazda held Plaintiff's head in place and also alleges she "grasped" his head while Officer Young pinned him to the ground. There is nothing in these allegations that indicates Kazda used force, let alone force that was excessive, in holding Plaintiff's head. The Fourth Amendment's reasonableness standard must afford school officials with a relatively wide range of acceptable action in dealing with disruptive students. *Campbell v. McAlister*, 162 F.3d 94, 1998 WL 770706, at *4–5 (5th Cir. 1998) (where plaintiff alleged that school official slammed disruptive student to floor and dragged him to principal's office, court determined official's conduct was not objectively unreasonable as a matter of law).

Further, regarding the use of handcuffs, as stated in the Court's previous opinion, handcuffing alone does not amount to excessive force. Plaintiff argues their use on a child and for longer than necessary was excessive force. Plaintiff does not allege that Kazda was responsible

5

for placing the handcuffs on him. Officer Lewis handcuffed Plaintiff. Plaintiff cites Kazda's failure to discontinue the use of handcuffs or failure to advocate that they be discontinued. Plaintiff has not demonstrated Kazda had authority to remove the handcuffs and her failure to advocate for their removal does not amount to excessive force. The Court concludes Plaintiff has failed to state an excessive force claim under § 1983 claim against Principal Kazda in her individual capacity.

    2. Qualified Immunity — Officers Young and Lewis

Officers Young and Lewis argue that Plaintiff's amended complaint lacks sufficient factual allegations to overcome their assert of qualified immunity. The Court previously determined that Plaintiff had not pleaded sufficient facts to establish an alleged constitutional violation arising from their use of excessive force. Further, the Court found that even if Plaintiff had established the officers used excessive force, they were still entitled to qualified immunity because Plaintiff failed to show that his right to be free from seizure under the circumstances was a clearly established right. The Court noted that, in a school setting, the law is not clearly established regarding the use of force by police officers, particularly in regard to the use of handcuffs to restrain disruptive students. *See Brown v. Coulston*, No. 4:19-CV-168-SDJ, 2020 WL 2813200, at *7 (E.D. Tex. May 29, 2020); *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 894–95 (N.D. Tex. Mar, 13, 2018). Plaintiff failed to present any applicable authority stating he had a right to be free from the use of restraint and handcuffs because of his special needs when his classroom had to be evacuated due to his behavior, especially under the unique challenges of a school environment. The Court concluded that Plaintiff's "excessive force claim fails because existing law at the time would not have apprised reasonable officers in Officer Young and Officer Lewis's position that their alleged conduct related to restraining and handcuffing Bradyn S. would violate the Fourth Amendment's prohibition on excessive force."

The Court finds that this is still the case. Plaintiff has not cited any relevant authority in support of his amended complaint to show this area of law was clearly established on March 3, 2017. Because the law does not put the constitutionality of the officers' actions toward Plaintiff beyond debate, they are entitled to qualified immunity. *See Brown*, 2020 WL 2813200, at *7. The officers' actions could not have violated any clearly established constitutional right concerning excessive force. *See id.*

3. Municipal Liability

In his original complaint, Plaintiff did not directly assert municipal liability claims against WISD or the City. But he did assert § 1983 claims against the individual defendants in their official capacities. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (suit against municipal officer in his or her official capacity is simply another way of pleading municipal liability). A governmental entity can be sued and subjected to monetary damages and injunctive relief under § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Id.* at 694. Such an entity cannot be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.* A plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017).

Plaintiff's original complaint failed to set forth any factual allegations that an official policy or custom of WISD or the City resulted in the alleged deprivation of his constitutional rights. Nor did Plaintiff plead any allegations showing a widespread WISD or City practice that is so common and well-settled as to constitute a custom that fairly represents policy. As a result, Plaintiff's claims against Young, Lewis, and Kazda in their official capacities failed.

7

a. WISD/Kazda

In his amended complaint, Plaintiff alleges that WISD failed to train its personnel in the use of restraint, de-escalation techniques, and behavior management. Plaintiff asserts these failures were a moving force in his injuries and constituted deliberate indifference on the part of WISD and Kazda. A *Monell* claim requires proof that WISD's policy was a moving force behind the *violation of a constitutional right*. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016). In the absence of a constitutional violation, there can be no municipal liability for WISD. *Elizondo v. Green*, 671 F.3d 506, 510–11 (5th Cir. 2012). The Court has determined that Plaintiff failed to plead sufficient facts to show that Principal Kazda used excessive force. As a result, Plaintiff's municipal liability claim against WISD based on Kazda's alleged use of excessive force in violation of the Fourth Amendment fails. *See Salazar-Limon*, 826 F.3d at 279; *Elizondo*, 671 F.3d at 510–11.

b. The City/Officers

The City contends Plaintiff has failed to allege a plausible claim of relief against it for municipal liability for various reasons. In addressing the City's argument, the Court will assume without deciding that Plaintiff sufficiently identified an official policy or custom and has pleaded facts to show the City violated his Fourth Amendment rights.

In his amended complaint, Plaintiff alleges the City failed to sufficiently train the officers in addressing the needs of a child with a disability and did not supervise the officers regarding the needs of a child with a disability. Plaintiff refers to Officer Young's testimony at an administrative hearing that he had no training to deal with special education students and knows of no one in the Waxahachie Police Department who had any such training. He had no training on how to restrain special education students. Plaintiff alleges the City "systematically failed to enact and/or enforce

8

a policy to train its officers in a manner to accommodate or protect the well-being of the disabled." He further alleges these failures were a moving force in the violation of his constitutional rights. He alleges the City's failure "to follow and/or promulgate laws, policies, and procedures to address the needs of disabled students such as Bradyn S. also constituted deliberate indifference to the rights of Bradyn S."

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizen's rights may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish the City's failure to train its officers, a plaintiff must show (1) inadequate training procedures; (2) that inadequate training caused the officers to use excessive force; and (3) the deliberate indifference of municipal policymakers. *Quinn*, 863 F.3d at 365. The inadequacy of the training must be closely related to the injury. *Id.* Defects in a particular training program must be specifically alleged. *Id.* A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick*, 563 U.S. at 61.

Among other things, the City contends Plaintiff fails to allege facts showing deliberate indifference. The failure to train must reflect a deliberate or conscious choice by a municipality. *City of Canton, Oh. v. Harris*, 489 U.S. 378, 389 (1989). A plaintiff must demonstrate a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). Absent proof of a pattern, deliberate indifference may be inferred from showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights. *Garza v. City of Donna*, 922 F.3d 626, 637–38 (5th Cir. 2019). The latter inference is possible only in very narrow circumstances. *Id.* at 638. To base deliberate

9

indifference on a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (quoting *Burge*, 336 F.3d at 373).

Here, Plaintiff has not alleged any facts showing a pattern of similar violations. There are no allegations of any other instances of Waxahachie Police Department encounters with Plaintiff or with other students. Plaintiff's response to the City's motion to dismiss fails to address the City's argument about lack of an alleged pattern. Nor has Plaintiff alleged any facts to support an inference that, based on this single incident, it should have been apparent to City policymakers that a constitutional violation was a highly predictable consequence of any failure to train. The Court concludes Plaintiff has failed to state a municipal liability claim against the City. The Court grants the motion to dismiss Plaintiff's § 1983 municipal liability claim against the City.

### Intentional Discrimination Under the ADA and RA

WISD has also moved to dismiss Plaintiff's claims under the ADA and RA. The evaluation of a claim for disability discrimination under the ADA and the RA are substantially the same and the only material difference between the two provisions lies in their respective causation requirements. *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019). Unlike § 1983, a municipal entity may be held vicariously liable for the acts of its employees under the ADA or RA. *See Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002). A plaintiff asserting a private cause of action for violations of the ADA or RA may only recover compensatory damages upon a showing of intentional discrimination. *Id.* at 574.

To allege intentional discrimination by a school district under § 504 of the RA and the ADA, a plaintiff must allege that the district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program. *D.A. ex rel. Latasha*

10

*A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010).  IDEA imposes an affirmative obligation on states to assure disabled children a free appropriate public education.  *Id.* at 453.  When, as here, allegations giving rise to a § 504 or ADA claim are predicated on a disagreement over compliance with IDEA, the plaintiff must allege facts that create "an inference of professional bad faith or gross misjudgment" to sufficiently allege a claim for intentional discrimination in the school context.  *Id.* at 455.  A plaintiff must show something more than mere negligence.  The Court previously found that Plaintiff failed to allege sufficient facts in his original complaint to create an inference of professional bad faith or gross misjudgment on the part of WISD.

Plaintiff's amended complaint alleges that WISD committed acts of intentional discrimination under the RA and ADA "as demonstrated by the facts alleged herein which evince professional bad faith and gross misjudgment."  In the factual background, Plaintiff alleges that after the March 3, 2017 incident, no "manifestation determination review" (MDR) was held specific to the incident to determine if the behavior in question was a manifestation of Plaintiff's disabilities.  Nor was there a timely functional behavior analysis (FBA) or Behavior Intervention Plan (BIP) conducted.  On March 6, Kazda agreed to hold an ARD (an admission, review, and dismissal committee—see footnote four in Doc. No. 29), but did not agree to discuss provision of an FBA or BIP.  Plaintiff's parents were told that additional observation was needed.

Plaintiff alleges that Principal Kazda thus required him to return, without reasonable accommodation, to the same environment that resulted in his severe psychological injury on March 3, 2017.  According to the amended complaint, on April 19, 2017, Plaintiff was involved in another serious behavioral incident at school and was injured as a result.  After the April 19 incident, WISD assigned Plaintiff to an interim alternative education setting "in a self-contained special education

11

classroom with two adults and no other students." An MDR was held on May 1, 2017, and it was determined that Plaintiff's behavior was a manifestation of his disability.

Plaintiff states that WISD's refusal to consider or provide necessary services even after the March 3 incident and all the preceding failures and violations constituted professional bad faith and misjudgment and thus constituted intentional discrimination. The amended complaint alleges "That the District failed to implement reasonable accommodations for the handicapped Student to receive the full benefits of the school program even after injury resulted because of that failure, and resulted in further injury, demonstrate that the District's actions throughout 2016-2017 were more than a mere failure to provide [free appropriate public education], but constituted professional bad faith and/or gross misjudgment."

WISD contends Plaintiff has not alleged facts which create an inference of professional bad faith or gross misjudgment. Plaintiff responds that he adequately pleaded that WISD's conduct, specifically its conduct after March 3, 2017, constituted professional bad faith and gross misjudgment. Plaintiff argues that by that point, after everything that had happened, it should have been obvious that something needed to be done to prevent further injury. But Plaintiff has not specifically alleged any facts to support an inference of bad faith or gross misjudgment. His allegations are just as consistent with negligence. As stated in the Court's previous opinion on this issue, Plaintiff's allegations show the school "took various measures to tailor Bradyn S.'s learning environment to his education needs based on his disability." His complaints about the school's delay in reassigning him or holding certain meetings constitute at most, mere negligence, rather than bad faith or gross misjudgment. *Cf. E.M. b/n/f Guerra v. San Benito Consol. Indep. Sch. Dist.*, 374 F. Supp. 3d 616, 625 (S.D. Tex. 2019) (allegation that district removed child from certain

12

special education services without educational justification gave rise to inference of bad faith or gross misjudgment). The Court grants WISD's motion to dismiss Plaintiff's RA and ADA claims.

Plaintiff's original complaint did not assert a claim under the ADA against the City. In his amended complaint, Plaintiff added such a claim. He alleges that the City's police department constitutes a program and services for ADA purposes and that the ADA requires law enforcement agencies to make reasonable modifications in their policies, practices and procedures that are necessary to ensure accessibility for individuals with disabilities. Plaintiff alleges that Officer Young assessed that Plaintiff had a disability because he asked Kazda, "Is he diagnosed?" The amended complaint states, "Despite having secured the situation and assessed that the child was disabled, [Officer] Young did not change his approach to the restraint or take any reasonable action which constituted an attempt to accommodate student's disability." Plaintiff further pleaded that it was an unnecessary use of force to keep him pinned to the ground for several minutes while the child was clearly in physical and emotional agony, and to question and admonish him during this time period, even after it was ascertained he had a disability and required accommodations. Plaintiff contends that "by failing to reasonably accommodate [its] services to accommodate [Plaintiff's] autism and speech impairment," the City violated the ADA.

The Fifth Circuit has recognized that a public entity's failure to reasonable accommodate the known limitations of persons with disabilities can constitute disability discrimination under Title II of the ADA. *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017). A critical component of a Title II claim for failure to accommodate, however, is proof that the disability and its consequential limitations were known by the entity providing services. *Id.* at 236. Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced as a result of that disability. *Id.* Otherwise, it would be

13

impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Id.* When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that his disability, resulting limitation, and necessary reasonable accommodation were "open, obvious, and apparent" to the entity in question. *Id.* at 237.

The City contends that Plaintiff has failed to allege any facts showing intentional discrimination under the ADA because of his autism and speech impairment. Plaintiff argues his disability was open, obvious, and apparent. Even if the Court accepts that the nature of Plaintiff's disabilities (autism and speech impairment) were apparent, that is not enough for a claim of intentional discrimination. The limitations resulting from the disability and the necessary reasonable accommodation must also be open, obvious, and apparent to the officers. *Id.; cf. Delano-Pyle*, 302 F.3d at 575–76 (where officer knew of DUI suspect's hearing problem and admitted he did not know if suspect understood his rights as verbally communicated, evidence supported jury finding of intentional discrimination). Plaintiff has not made any allegations that would show the limitations that resulted from Plaintiff's disability and the necessary reasonable accommodation were open, obvious, and apparent to the officers. Plaintiff fails to state an ADA claim against the City.

In his response to the motions to dismiss, Plaintiff asks for the opportunity to replead. Plaintiff has already been given an opportunity to cure the pleading deficiencies in his complaint. The Court concludes that further amendment is not warranted. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Accordingly, all of Plaintiff's claims against the City and Officers Young and Lewis are dismissed with prejudice.

14

Further, Plaintiff's claims against WISD and Principal Kazda under the RA, the ADA, and 42 U.S.C. § 1983 are dismissed with prejudice.

**SO ORDERED.**

Signed September 23, 2020.

                                                             ADA BROWN
                                                             UNITED STATES DISTRICT JUDGE